UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:07-394-KKC

JAMES E. ABNEY,                                                    PLAINTIFF

v.                                    **OPINION AND ORDER**

MICHAEL J. ASTRUE,
Commissioner of Social Security,                              DEFENDANT

\* \* \* \* \* \* \* \*

This matter is before the Court on the Cross Motions for Summary Judgment of the

Plaintiff, James E. Abney [R. 9] and the Defendant, Commissioner Astrue [R. 10].  For the

reasons given below, the Plaintiff's Motion for Summary Judgment is **DENIED** and the

Defendant's Motion for Summary Judgment is **GRANTED**.

I.        **Factual and Procedural Background**

Plaintiff James E. Abney filed his application for a period of disability and disability

insurance benefits with the Social Security Administration on March 4, 2005, in which he alleged

that he became disabled on January 1, 2003.  ALJ Opinion at 1.  Plaintiff claimed disability due

to depression; anxiety; cardiac disease; obesity; osteoarthritis; fibromyalgia; obstructive sleep

apnea; hearing loss; and severe back, neck, and leg pain.  Plaintiff's Motion for Summary

Judgment at 3 [hereinafter "Plaintiff's Motion"].  Plaintiff last met the insured status

requirements of the Social Security Act on December 31, 2004.  ALJ Opinion at 3.

Plaintiff's routine day consists of reading, mowing, gardening, attending to his personal

needs, watching television, washing dishes, visiting friends and family members, doing

1

shopping, and cooking.  Transcript at 86-93 [hereinafter "Tr."]; ALJ Opinion at 8.  He has a driver's license and goes driving approximately five to six times per week.  ALJ Opinion at 8.  Plaintiff describes his pain as dull, aching, and usually constant, and ranking a seven or eight on a scale of one to ten.  *Id.*  Plaintiff estimates that he can lift ten to fifteen pounds, walk 200 yards on a flat surface, "stand 20 minutes in Wal-Mart with his wife," sit for thirty minutes, and can bend and stoop.  *Id.*  He takes several medications for his pain, depression, and other impairments.  Tr. at 125.

Plaintiff's administrative transcript includes numerous medical records from both before and after his date last insured of December 31, 2004.  Records from before Plaintiff's date last insured may be summarized as follows.  Plaintiff visited the Pattie A. Clay Hospital from September 23, 1997 to August 23, 1998.  Exercise testing there indicated that Plaintiff had poor exercise tolerance, normal sinus rhythm and sinus tachycardia, and that there was no evidence of ischemia.  Tr. at 127.  Plaintiff was diagnosed with extensive ethmoid sinusitis, was told to maintain a regular diet, and was prescribed medications.  Tr. at 130, 135.  In May 1999, Plaintiff had an audiogram performed at Kentucky Ear, Nose, and Throat Head and Neck Surgeons.  Tr. at 148.  Discrimination scores from this audiogram were seventy-two percent left ear, ninety-six percent right ear, which was consistent with mild hearing loss.  Tr. at 148.  Progress notes from this time indicate complaints of leg pain, headaches, dizziness, abdominal pain, gastroesophageal reflux disease [hereinafter "GERD"], and earaches.  Tr. at 140-53.

November 5, 2004 treatment notes from Marcum and Wallace Memorial Hospital gave Plaintiff a primary diagnosis of anxiety attacks and indicated that all his systems were negative and that his physical examinations were normal.  Tr. at 160-68.  2003 radiology reports from this

hospital also returned normal, though there was an impression of spondylosis with marginal spurring at L4-5 and L3-4. Tr. at 295-304, 421. 2001 testing was normal, other than a diagnosis of GERD. Tr. at 424-27. 1999 testing revealed degenerative disc disease with apparent small central disc protrusion and borderline canal stenosis. Tr. at 428. Plaintiff's records from Clark Regional Medical Center on December 17, 2004 revealed an abnormal stress test and listed physicians' impressions of fixed anterior wall and anteroseptal wall, raising the possibility of old inferior wall and anteroseptal myocardial infarct. Tr. at 170-71, 246. In addition, these impressions discussed global hypokinesis of cardiac wall with decreased LV ejection frame of forty-three percent, below the normal range, but no gross regional wall abnormality. Tr. at 170-71. A December 30, 2004 echocardiogram found the left ventricle to be mildly dilated with a normal ejection fraction greater than sixty percent, as well as mild aortic sclerosis with mild mitral and tricuspid regurgitation. Tr. at 249. Also on this date, Plaintiff told Dr. David Cassidy that he did not have any prior history of cardiac disease, including that of rheumatic fever, heart murmurs, heart failure, or myocardial infarction. Tr. at 246-47. Dr. Cassidy indicated that Plaintiff's panic attacks were controlled on Librium. Tr. at 246. Powell County Clinic records from October 2003 to December 2004 reflect Plaintiff's complaints of anxiety, back pain, headaches, musculoskeletal tenderness and pain, obesity, heartburn, indigestion, and coughing. Tr. at 208-40.

A February 2004 assessment from Dr. Terry L. Troutt stated that Plaintiff has chronic lower back pain most likely attributed to degenerative processes of the lumbrosacral spine. Tr. at 256. Dr. Troutt described Plaintiff's complaints about back, neck, leg, and foot pain; that the pain is much more noticeable in the morning and improves as the day continues, but that the pain

remains nonetheless.  Tr. at 255.  Dr. Troutt also speculated about degenerative disc disease, but noted that there were no abnormal findings here.  Dr. Troutt stated that there was evidence of bilateral plantar fascilitis and cervicalgia most likely degenerative in nature.  Tr. at 256.  Dr. Troutt also noted that Plaintiff had a full range of motion in his back and joints.  Tr. at 256.  Plaintiff had no spasms or trigger points, and straight leg raising tests were negative.  Tr. at 256.  Plaintiff told Dr. Troutt at this time that he was not taking any pain medications.  Tr. at 255.  Other Powell County Clinic notes from throughout 2004 revealed generally normal results for Plaintiff.  However, Plaintiff had mild degenerative disc disease, mild to moderate facet arthritis in the lower lumbar spine, loss of usual cervical lordosis and slight curvature of the lower cervical spine, mild facet arthritis, and diffuse disc bulge without evidence of disc protrusion in April 2004.  Tr. at 272-74.  Dr. Benjamin McQuaide also raised the possibility of sequela from systemic hypertension in December 2004.  Tr. at 270.  April 2004 x-rays from Dr. Jaya Pampati again noted diffuse disc bulge without evidence of disc protrusion, mild bilateral foraminal narrowing, facet anthropathy at multiple levels, mild degenerative disc disease, and mild to moderate facet arthritis.  Tr. at 330-32.

Records following Plaintiff's date last insured are also revealing.  2005 records from the Powell County Clinic indicate anxiety and muscle tenderness.  Tr. at 196-207.  Impressions of Dr. Hameed Koury in March 2005 were that Plaintiff had a decreased gallbladder ejection fraction of 12.3 percent.  Tr. at 280.  A gallbladder ultrasound and colonoscopy performed in March 2005 returned normal.  Tr. at 283-94.  Dr. James Athy opined in a psychiatric review technique form that Plaintiff did not have a medically determinable mental impairment.  Tr. at 306-20.  A January 31, 2005 chest x-ray revealed no evidence of acute cardiopulmonary disease.

4

Tr. at 266.  May 2005 treatment notes from Dr. Pampati reflected Plaintiff's complaints of

increasing generalized joint, neck, and shoulder pains and panic attacks, and noted that his

medications did not appear to help him much, although testing appeared normal.  Tr. at 323-24.

Dr. Pampati diagnosed Plaintiff with mild generalized osteoarthritis and fibromyalgia, and noted

that he has a history of anxiety disorder.  Tr. at 324.  In June 2005, Dr. Pampati diagnosed

Plaintiff with fibromyalgia, degenerative joint disease, anxiety, and depression, and stated that

Plaintiff had a history of sleep apnea and was completely disabled for any occupation.  Tr. at 321.

 A July 29, 2005 physical residual functional capacity [hereinafter "RFC"] assessment by

Dr. Paran Saranga opined that Plaintiff can occasionally lift and carry fifty ponds; can frequently

lift and carry twenty-five pounds; can stand, walk, and sit six out of eight hours; and has only

occasional limitations in climbing, stooping, and crawling.  Tr. at 338-39.  Dr. Saranga found

Plaintiff's statements to be only partially credible due to the medical findings of full range of

motion, no motor loss, and no myocardial infarction.  Tr. at 342.  Plaintiff submitted records

from St. Joseph Behavioral Medicine from June 2005 to December 2005.  Although these

records reflect intermittent complaints of sleep difficulties and anxiety issues, Plaintiff's progress

notes reveal his belief that he was steadily getting better during this time.  Tr. at 433-53.  Plaintiff

was also treated at the St. Joseph Sleep Wellness Center from December 2005 to May 2006 for

sleep disturbances.  He was diagnosed with obstructive sleep apnea syndrome and exploding

head syndrome, though this improved with the use of CPAP treatment.  Tr. at 454-64.  Plaintiff

admitted during this time that he had stopped all of his previous psychiatric medications.  Tr. at

454.  On a later follow-up visit, Plaintiff stated that his insomnia improved with the use of his

prescribed medications.  Tr. at 483.

A cardiology examination at Bluegrass Cardiology in October 2004 gave a list of problems that Plaintiff suffered from, including back problems, spur on his disc in the cervical region, and hypertension.  Tr. at 250.  Doctor Glenn Morris stated that Plaintiff had a wide range of motion over the cervical region, and that his extremities were within the normal range of motion.  Tr. at 251.  No abnormalities were reported from this examination.  Tr. at 251.  In a follow-up one year later, similar results were reported.  Tr. at 466-67.  Plaintiff focused on his depression, anxiety, tachycardias, and bradycardias, but not on his abnormal stress examination.  Tr. at 467.  Powell County Clinic notes from January 2006 reflected continued complaints of depression, anxiety, joint, back, and neck pain, headaches, and sleeping problems.  Tr. at 468-72.  From June to August 2006, Plaintiff presented at Advanced Pain Medicine for complaints of cervical spine pain with headaches.  He was diagnosed with cervical spine pain, cervical spondylosis with bilateral cervical facet anthropathy, cervicogenic headache causing bilateal occipital neuralgia, and chronic pain.  Tr. at 473-79.  A bilateral cervical facet nerve block resulted in "overwhelming good results" on a temporary basis, though Plaintiff's pain gradually returned.  Tr. at 473.  April 2005 testing at the Clark Regional Medical Center revealed normal results, including a normal MRI of the cervical spine, except for mild lower extremity arterial disease.  Tr. at 502-07.  Powell County Clinic notes from April 2005 to August 2006 indicate Plaintiff's complaints of back pain, headaches, depression, and anxiety, as well as a past medical history of arthritis, heart attacks, and high blood pressure.  Tr. at 485-95.

Treatment notes from Dr. Aleksandr Mogilevski from February 2006 to August 2006 reveal that Plaintiff continued to complain of recurrent headaches in relation to cervical muscle spasm and signs of occipital neuralgia.  Physical and neurological examinations appeared normal,

6

as did a brain MRI, and Plaintiff initially reported a remission in his headaches after trigger point injections and occipital nerve blocks.  Tr. at 511-18.  Dr. Mogilevski also provided a physical assessment of Plaintiff's ability to do work-related activities.  In it, he opined that Plaintiff can only lift and carry ten pounds, can only stand and walk one out of eight hours, can never perform a variety of postural activities, and is limited in his ability to reach, handle, and push or pull objects.  Tr. at 508-10.

In June 2006, psychiatrist Dr. Camellia Shirazi diagnosed Plaintiff with major depression recurrent with anxiety, and noted that Plaintiff had a history of hypertension, sleep apnea, arthritis, and headaches.  Tr. at 522-23.  Dr. Shirazi described Plaintiff as having no motivation and no interests, and subject to constant worry, anxiety, depression, and panic attacks.  Tr. at 522. Dr. Shirazi noted that Plaintiff had a history of depression and panic attacks since 1989, but that his depression had improved with the use of medication and worsened when Plaintiff stopped using the medication.  Tr. at 522.  Dr. Shirazi opined that Plaintiff has marked limitations in his ability to understand, remember, and carry out detailed instructions; interact appropriately with the public, supervisors, and co-workers; and respond appropriately to work pressures and changes in a routine work setting.  Tr. 519-20.  Dr. Shirazi also opined that Plaintiff has moderate limitations in his ability to make judgments on simple work-related decisions, and slight limitations in his ability to understand, remember, and carry out short, simple instructions. Tr. at 519.  Plaintiff testified that he did not seek treatment from a mental health professional such as Dr. Shirazi until the summer of 2005, that this treatment helped him, and that he has not visited her since December 2006.  Tr. at 585-86.

Licensed psychological associate Jennifer L. Wilke-Deaton examined Plaintiff on August

30, 2006.  Plaintiff reported to her that he is unable to work due to physical problems, anxiety, and depression, the latter of which has been present without relief since 2002.  Tr. at 533.  Plaintiff also reported panic attacks, hallucinations, and only minimal relief with his medications.  Tr. at 533.  Wilke-Deaton diagnosed Plaintiff with major depressive disorder, recurrent, severe, with psychotic features, chronic; panic disorder, without agoraphobia; alcohol dependence, without physiological dependence, in sustained full remission; and poor borderline intellectual functioning.  Tr. at 532-33.  Wilke-Deaton opined that Plaintiff has marked limitations in his ability to understand, remember, and carry out detailed instructions; in his ability to make judgments on simple work-related decisions; and in his ability to respond appropriately to work pressures and changes in a routine work setting.  Tr. at 524-25.  Wilke-Deaton also opined that Plaintiff has moderate limitations in his ability to understand, remember, and carry out short, simple instructions; and in his ability to interact appropriately with the public, supervisors, and co-workers.  Tr. at 524-25.

Plaintiff's disability application was denied initially and upon reconsideration.  Plaintiff testified at a hearing before Administrative Law Judge [hereinafter "ALJ"] Don C. Paris on March 5, 2007.  On March 28, 2007, the ALJ denied Plaintiff's application by written opinion.  Although the ALJ determined that Plaintiff had several severe impairments, the ALJ also found that none of them were of listing-level severity and that Plaintiff retained the RFC to perform jobs that existed in significant numbers in the national economy.  Therefore, Plaintiff was not considered disabled under the Social Security Act.  The Social Security Appeals Council denied review of this decision, and Plaintiff subsequently brought the instant action before this Court.

## II.      Standard of Review

When reviewing decisions of the Social Security Agency, the Court is commanded to uphold the Agency decision, "absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (internal quotation marks and citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 285-86 (6th Cir. 1994). The Court is required to defer to the Agency's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Further, when reviewing the ALJ's decision, the Court cannot review the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 468 (6th Cir. 2006); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Where the Commissioner adopts the ALJ's opinion as its own opinion, the Court reviews the ALJ's opinion directly. *See Sharp v. Barnhart*, 152 Fed. Appx. 503, 506 (6th Cir. 2005).

## III.     Analysis

Plaintiff submits that the ALJ's decision denying him disability insurance benefits should be reversed and that he should be ordered benefits, or in the alternative, that the matter should be remanded to the Social Security Administration for further proceedings.  Plaintiff argues that

there are several reasons why this should be the outcome. First, the ALJ erred in determining that all medical evidence dating after Plaintiff's date last insured was irrelevant to the issue of disability. Second, the ALJ erred in using his subjective perception of Plaintiff's appearance to evaluate Plaintiff's pain and credibility. Third, the ALJ erred by failing to state a reason for rejecting the opinions of Drs. Mogileski and Shirazi and psychological associate Wilke-Deaton. Finally, Plaintiff generally argues that the ALJ's decision is not supported by substantial evidence.

**A.     Procedural Arguments**

**1.     Refusal to Consider Medical Evidence Dating after Plaintiff's Date Last Insured**

Plaintiff alleges that he became disabled on January 1, 2003. Plaintiff's earnings records show that he acquired sufficient quarters of coverage under sections 216(i) and 223 of the Social Security Act to remain insured through December 31, 2004, the date last insured. To qualify for disability insurance benefits, therefore, Plaintiff needed to establish his disability between the period of January 1, 2003 and December 31, 2004. ALJ Opinion at 1. Plaintiff does not appear to dispute this. As exhibited in detail above, much of Plaintiff's record medical evidence dates from after his date last insured of December 31, 2004. However, the ALJ summarily dismissed all these medical records, considering them irrelevant to the matter of Plaintiff's disability during the requisite time period. "Although there are significant medical records in the file, it is noted that inasmuch as the claimant's insurability for Title II purposes expired December 31, 2004, subsequent medical evidence is not pertinent and is irrelevant to the issue at hand." *Id.* at 5.

Plaintiff contends that this was erroneous. He argues that an ALJ has the duty to consider all evidence in a claimant's file, even that which post-dates the date last insured, particularly

10

where the subsequent evidence relates back to the claimant's condition before the date last

insured.  According to Plaintiff, where the claimant suffers from a slowly progressive

impairment, such as Plaintiff's depression or back pain, the ALJ may not refuse to infer the

existence of severe limitations prior to the date last insured where there is evidence of these

impairments after the date last insured.  Plaintiff states that much of the post-date last insured

medical evidence, in particular the opinions of Drs. Mogilevski and Shirazi and psychological

associate Wilke-Deaton, is highly reflective of Plaintiff's condition prior to the date last insured,

since it sets forth limitations from impairments and conditions that he suffered from well before

December 31, 2004.  As such, the later evidence relates back to Plaintiff's disability status during

the requisite time period, and it was reversible error for the ALJ to dismiss this evidence as

irrelevant simply because it post-dated the date last insured.

   The Court does not agree with Plaintiff.  "Evidence of disability obtained after the

expiration of insured status is generally of little probative value."  *Strong v. Soc. Sec. Admin.*, 88

Fed. Appx. 841, 846 (6th Cir. 2004).  Record medical evidence from after a claimant's date last

insured is only relevant to a disability determination where the evidence relates back to the

claimant's limitations prior to the date last insured.  *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th

Cir. 1988) (medical evidence after date last insured was only minimally probative of claimant's

condition before date last insured, so did not affect disability determination); *see also Begley v.*

*Matthews*, 544 F.2d 1345, 1354 (6th Cir. 1976) ("Medical evidence of a subsequent condition of

health, *reasonably proximate to a preceding time* may be used to establish the existence of the

same condition at the preceding time.") (emphasis added).  It is also apparent that post-date last

insured evidence, to the extent that it relates back, is relevant only if it is reflective of a

11

claimant's limitations prior to the date last insured, rather than merely his impairments or condition prior to this date.  *See* 20 C.F.R. § 416.945(a)(1) ("Your *impairment(s)*, and any related symptoms, such as pain, *may cause physical and mental limitations that affect what you can do in a work setting.  Your residual functional capacity is the most you can still do despite your limitations.*") (emphasis added); *see also Higgs*, 880 F.2d at 863 ("The mere diagnosis . . . , of course, says nothing about the severity of the condition.").

In this case, although Plaintiff has submitted numerous medical records dating after December 31, 2004, his date last insured, it appears that none of them tend to relate back to the state of Plaintiff's physical or mental limitations prior to this date.  Plaintiff primarily relies on the assessments of Drs. Mogilevski and Shirazi and psychological associate Wilke-Deaton to demonstrate the relevance of this later evidence.  However, none of these individuals had any contact with Plaintiff until 2006, well after the date last insured.  Any attempt to opine about Plaintiff's limitations prior to December 31, 2004 would therefore be suspect even to begin with. In any case, none of these sources attempted to relate their physical and mental assessments back to before Plaintiff's date last insured.  The closest any of them comes to this is when Dr. Shirazi noted that Plaintiff has allegedly had a history of depression and panic attacks since 1989, and when Wilke-Deaton stated that Plaintiff's depression has been present without relief since 2002. Tr. at 522, 533.  Obviously, these are merely instances where Dr. Shirazi and Wilke-Deaton reiterated what Plaintiff reported to them about his alleged impairments prior to his date last insured.  Simply reciting a claimant's medical history does not act to relate the claimant's medical condition back to an earlier date such as to opine about his limitations at that earlier point in time.  This record evidence is not relevant to the disability determination.

The remainder of the post-December 31, 2004 evidence is also irrelevant to the disability determination for similar reasons.  Most of the remaining evidence, in fact, undermines Plaintiff's case, rather than supports it.  A March 2005 gallbladder ultrasound and colonoscopy returned normal.  Tr. at 283-94.  Dr. Athy opined that Plaintiff did not have a medically determinable mental impairment.  Tr. at 306-20.  A chest x-ray from January 2005 revealed no evidence of acute cardiopulmonary disease.  Tr. at 266.  Testing performed by Dr. Pampati was normal.  Tr. at 323-24.  Dr. Saranga submitted an RFC assessment that clearly indicates that Plaintiff is not disabled, and she stated that she found Plaintiff's statements to be only partially credible due to medical findings of a full range of motion, no motor loss, and no myocardial infarction.  Tr. at 338-39, 342.  Plaintiff's progress notes from St. Joseph Wellness Center stated Plaintiff's belief that his sleep disturbances and anxiety were steadily getting better, and Plaintiff also stated that his symptoms improved with the use of CPAP treatment.  Tr. at 454-64.  Plaintiff also admitted that he had stopped using his psychiatric medication, and that his insomnia improved with the use of medication.  Tr. at 454, 483.  Furthermore, Dr. Morris stated that Plaintiff had a wide range of motion over the cervical region and that his extremities were within the normal range of motion; no abnormalities were reported.  Tr. at 251.  Similar results were reported on a one-year follow-up.  Tr. at 466-67.  April 2005 testing at Clark Regional Medical Center showed normal results, including a normal MRI of the cervical spine, with the only exception being a showing of mild lower extremity arterial disease.  Tr. at 502-07.

Admittedly, these post-date last insured medical records do reveal various diagnoses that Plaintiff was given during this time and reflect Plaintiff's complaints about his pain and other ailments.  However, as noted above, "[t]he mere diagnosis . . . , of course, says nothing about the

13

severity of the condition." *Higgs*, 880 F.2d at 863.  Diagnosing Plaintiff at this later time says

nothing about his actual limitations at this time, and also does not of itself relate back to

Plaintiff's limitations prior to the date last insured.  Providing statements about Plaintiff's

medical history are irrelevant to the issue of prior disability for the same reason that Dr. Shirazi

and Wilke-Deaton's medical history statements are irrelevant.  Though Dr. Pampati assessed

Plaintiff as "completely disabled for any occupation" on June 27, 2005, there was no indication

that this assessment related back to the time before Plaintiff's date last insured.  Tr. at 321.  In

addition, though these medical records report numerous complaints from Plaintiff about pain and

other symptoms from his impairments, these subjective complaints are not supported by the

objective medical evidence from this time period, as documented above.  Moreover, as explained

in depth below, the ALJ did not find Plaintiff's subjective complaints about his symptoms to be

credible for several reasons, a finding that the Court accepts.  Therefore, these complaints also

cannot serve to relate back to Plaintiff's limitations prior to his date last insured.  The medical

records post dating December 31, 2004 are irrelevant to the issue of Plaintiff's disability, and the

ALJ was right to dismiss them.[1]

     Plaintiff also argues that dismissing the post-date last insured evidence is not appropriate

where his impairments are slowly progressive in nature.  *See Blankenship v. Bowen*, 874 F.2d

1116, 1122 (6th Cir. 1989) (impairments were of a slowly progressive nature, thus the ALJ failed

---

[1]  It may have been more appropriate, as a procedural matter, for the ALJ to perform the same type of
analysis that the Court did to determine that the post-date last insured evidence is irrelevant specifically because
none of it relates back to the requisite time period, rather than summarily dismissing it as he did.  However, since this
Court finds that none of this evidence relates back, any error that the ALJ may have made in not specifying this
analysis is harmless, and remand would not be warranted.  *See Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989)
("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion
unless there is reason to believe that the remand might lead to a different result.").

to draw inferences from the medical and other evidence as to whether claimant was able to engage in substantial gainful activity prior to the expiration of his insured status).  Plaintiff points to his depression and back pain as examples of such impairments that are slowly progressive in nature.  However, in *Blankenship*, the evidence established that the claimant's impairment actually had progressively worsened over time.  *See id.* at 1120.  Plaintiff's medical evidence, on the other hand, does not establish that his depression and back pain actually were progressively worsening.  Testing and radiology reports, with the exception of one stress test, throughout 2001, 2003, and 2004 all returned normal.  Tr. at 127, 160-68, 170-71, 246, 295-304, 421.  In 2004, Dr. Troutt noted that Plaintiff's pain gradually improved throughout the day.  Tr. at 255.  Dr. Troutt also reported that Plaintiff had a full range of motion in his back and joints, had no spasms or trigger points, and that straight leg raising tests were negative.  Tr. at 256.  In addition, Plaintiff admitted to Dr. Troutt in 2004 that he was not taking any pain medications.  Tr. at 255.

The record shows numerous diagnoses for degenerative disc disease, facet arthritis, facet anthropathy, and disc bulge, but does not indicate that Plaintiff's alleged impairments from these conditions were actually worsening.  On the contrary, the aforementioned evidence from testing performed on Plaintiff during this time reveals almost entirely normal results.  Moreover, the evidence indicates that Plaintiff's pain medication improved his symptoms, and that at times he simply chose not to take his medications.  Moreover, as for Plaintiff's depression and other psychological symptoms, Dr. Cassidy remarked that Plaintiff's panic attacks were controlled with the use of Librium, and Plaintiff admitted that he had never sought other treatment from a mental health professional until after his date last insured, and that this treatment had helped.  Tr. at 585-86.  It is difficult to believe that these psychological impairments were progressively worsening

15

during the period of disability when Plaintiff did not seek further treatment until well after that

period, especially since Plaintiff repeatedly sought treatment for his physical impairments.  *See*

*Key v. Callahan*, 109 F.3d 270, 273-74 (6th Cir. 1997) (significant that claimant sought no

treatment for his mental impairments until after the date last insured, where record revealed that

he did not hesitate to seek medical assistance for physical impairments prior to this date).  As

Plaintiff has not demonstrated that his impairments were worsening in a slowly progressive

fashion, the ALJ's refusal to infer the existence of disabling impairments from the post-

December 31, 2004 medical evidence was correct.  No reversible error was committed here.

**2.      Use of Subjective Perception of Plaintiff's Appearance to Evaluate Plaintiff's Pain
and Credibility**

Plaintiff next faults the ALJ for assessing the credibility of Plaintiff's statements

describing his pain and other symptoms based on Plaintiff's appearance during the administrative

hearing.  The ALJ stated that he "carefully observed the claimant and notes that he was not in any

obvious pain or discomfort when walking into or out of the hearing room or while sitting during

the course of the hearing.  In addition, the claimant lacked the general physical appearance of a

person who might have been experiencing prolonged or severe pain."  ALJ Opinion at 9.

Plaintiff argues that this amounts to a "sit and squirm" test, and that is improper to base a

credibility determination solely on this, as the ALJ did.

A two-part analysis is used to evaluate a claimant's credibility regarding complaints of

disabling pain.  First, the ALJ must determine whether the claimant has an underlying medically

determinable impairment that could reasonably be expected to produce the claimant's symptoms.

20 C.F.R. § 929(a).  Second, if such an impairment exists, then the ALJ must evaluate the

16

intensity, persistence, and limiting effects of the symptoms on the claimant's ability to do basic work activities. *Id.* Relevant factors that may be considered in this evaluation include: the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms; other treatment undertaken to relieve symptoms; other measures undertaken to relieve symptoms; and any other factors bearing on the ability of the claimant to perform basic work activities. *Id.*; *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

If this observation of Plaintiff's conduct and appearance were the only finding that the ALJ based his credibility determination on, the Court would have to agree with Plaintiff's argument. An ALJ's observation of the claimant at the hearing is a relevant factor that may be utilized in this credibility evaluation, but the evaluation may not be based *solely* on this one factor. *See Martin v. Sec. of Health & Human Servs.*, 735 F.2d 1008, 1010 (6th Cir. 1984) ("'[T]he ALJ must cite *some* other evidence for a denying a claim for pain in addition to personal observation.'") (quoting *Weaver v. Sec. of Health & Human Servs.*, 722 F.2d 310, 312 (6th Cir. 1983)). Moreover, an ALJ must "explain his credibility determinations in his decision such that it 'must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Rogers*, 486 F.3d at 248 (quoting Social Security Ruling 96-7p).

In this case, however, it is clear that the ALJ did not base his credibility determination solely on his personal observation of the Plaintiff's actions and appearance during the hearing. In addition to this, the ALJ also discussed Plaintiff's daily activities, which included tending to his

17

personal needs, gardening, washing dishes, mowing the lawn, driving to town, visiting family

and friends, shopping, and cooking.  ALJ Opinion at 8.  This is a relevant factor that may be

taken into account.  *Rogers*, 486 F.3d at 247.  Furthermore, the ALJ recited a large amount of

record medical evidence that also plainly influenced his credibility determination.  Without

needlessly repeating all of the relied-upon evidence here, some examples of it include the

following: Plaintiff's level of medical treatment and amount of prescribed medication was not

significantly strong given the alleged severity of his pain; Dr. Cassidy found no prior history of

cardiac disease or myocardial infarction and a January 31, 2005 chest x-ray showed no evidence

of acute cardiopulmonary disease; an April 13, 2004 lumbar spine x-ray showed only mild

degenerative disc disease and mild to moderate face arthritis, despite Plaintiff's allegations of

chronic pain with a severity of seven to eight on a scale of one to ten; Plaintiff had full range of

motion of the cervical and lumbrosacral spine; and the fact that even after his alleged disability

date, Plaintiff was able to work part-time for a mowing company through September 2004.  ALJ

Opinion at 8.  Finally, the ALJ stated that his opinion on this matter is further supported by

assessments of state agency physicians and psychologists who opined that Plaintiff had no

medically determinable mental impairment and that he could perform medium exertional work

activity.  *Id.* at 9.  The ALJ did not solely rely on his personal observations of Plaintiff's actions

and appearance at the administrative hearing in making his credibility determination.  No

reversible error was committed here.

**3.      Rejection of the Opinions of Drs. Mogilevski and Shirazi and Psychological**

       **Associate Wilke-Deaton without Proper Explanation**

Plaintiff also faults the ALJ for failing to address the limitations set forth in the opinions

18

of Drs. Mogilevski and Shirazi and psychological associate Wilke-Deaton.  Plaintiff cites to 20

C.F.R. § 404.1527(d)(2) and *Wilson v. Commissioner of Social Security*, 378 F.3d 541 (6th Cir.

2004), to argue that the ALJ was required to articulate specific reasons for his rejection of these

opinions, and particularly for Drs. Mogilevski and Shirazi, since they should be considered

treating sources.  Plaintiff contends that the ALJ's failure to do this constitutes reversible error.

The Court does not agree with Plaintiff.  20 C.F.R. § 404.1527(d)(2) commands the

Social Security Administration to "always give good reasons in our notice of determination or

decision for the weight we give your treating source's opinion."  According to *Wilson*, an ALJ's

failure to follow this procedural requirement, even if the disability decision is otherwise

supported by substantial evidence, is a ground for remand.  *Wilson*, 378 F.3d at 544-45.

However, in *Smith v. Commissioner of Social Security*, 482 F.3d 873 (6th Cir. 2007), the Sixth

Circuit Court of Appeals clarified *Wilson* to explain that the "good reasons" requirement of 20

C.F.R. § 404.1527(d)(2) only applies to opinions of *treating sources*, and not to those of other

types of medical sources.  *See Smith*, 482 F.3d at 876 ("Yet even if the purpose of the reasons-

giving requirement in § 404.1527(d)(2) applies to the entire regulation, the SSA requires ALJs to

give reasons for only *treating sources*.").

There are three types of acceptable medical sources that may provide medical evidence in

social security disability cases: nonexamining sources, nontreating sources, and treating sources.

A nonexamining source is "a physician, psychologist, or other acceptable medical source who

has not examined you but who provides a medical or other opinion in your case."  20 C.F.R. §

404.1502.  A nontreating source is "a physician, psychologist, or other acceptable medical source

who has examined you but does not have, or did not have, an ongoing treatment relationship with

you." *Id.* Finally, a treating source is "your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." *Id.*

From the record, it appears that Dr. Shirazi only met with Plaintiff on one occasion, June 1, 2006; she signed an assessment of this visit on August 24, 2006. Tr. at 520, 522. Furthermore, psychological associate Wilke-Deaton examined Plaintiff on only one occasion, on August 30, 2006. Tr. at 527. One meeting clearly cannot constitute the "ongoing treatment relationship" required for Dr. Shirazi and Wilke-Deaton to be considered treating sources. 20 C.F.R. § 404.1502. As such, even though the ALJ did not explicitly articulate any "good reasons" for his refusal to accept the limitations contained in these two sources' opinions, *Wilson* and 20 C.F.R. § 404.1527(d)(2) do not require the ALJ to do so. No reversible error was committed here. There is no dispute from the Commissioner, however, that Dr. Mogilevski constitutes a treating source. Consequently, the ALJ was required to provide "good reasons" for his apparent rejection of Dr. Mogilevski's opinion. Dr. Mogilevski's opinion is mentioned nowhere within the ALJ's disability decision. As such, it would appear that the ALJ failed to comply with the "good reasons" requirement of 20 C.F.R. § 404.1527(d)(2) with respect to Dr. Mogilevski.

Nevertheless, the Court finds no fault with the ALJ's analysis here, because the ALJ's failure to explain his rejection of Dr. Mogilevski's opinion falls within the *de minimis* harmless-error exception to the "good reasons" requirement. The Sixth Circuit has recognized that there are three situations where an ALJ's failure to explicitly comply with the reasons-giving requirement of 20 C.F.R. § 404.1527(d)(2) will not constitute reversible error. The first situation

20

is where a treating-source's opinion is so patently deficient that the ALJ could not possibly credit it. The second is where the ALJ adopts the opinion of the treating source or makes findings consistent with the opinion. The third *de minimis* harmless-error situation, and the one implicated by this case, is where the ALJ has met the goal of 20 C.F.R. § 404.1527(d)(2)—the provision of the procedural safeguard of reasons—even though he has not complied with the terms of the regulation. *See, e.g.*, *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 747-48 (6th Cir. 2007); *Nelson*, 195 Fed. Appx. at 470-72; *Hall v. Comm'r of Soc. Sec.*, 148 Fed. Appx. 456, 461-67 (6th Cir. 2005); *Wilson*, 378 F.3d at 547.

In this case, although the ALJ did not specifically explain the reasons behind his rejection of Dr. Mogilevski's opinion, he did explain that he considered medical evidence subsequent to Plaintiff's date last insured of December 31, 2004 to be irrelevant to the disability determination. ALJ Opinion at 5. As discussed above, the ALJ's dismissal of all post-December 31, 2004 medical evidence was proper. According to the administrative record, Dr. Mogilevski's treatment relationship with Plaintiff did not begin until February 2006, after the date last insured. Tr. at 508-18. Thus, the treating-source opinion was among the evidence that the ALJ correctly considered irrelevant to the disability determination. Even though Dr. Mogilevski's opinion was never explicitly rejected, and "good reasons" were never provided specifically with regards to this particular opinion, the ALJ's appropriate dismissal of the post-date last insured evidence obviously embraces his dismissal of Dr. Mogilevski's opinion. This is akin to "implicitly" or "indirectly" providing sufficient reasons for rejecting a treating-source opinion, an approach that the Sixth Circuit has held to be within the third *de minimis* harmless-error exception to the "good reasons" requirement. *See Nelson*, 195 Fed. Appx. at 472. Although the terms of 20 C.F.R. §

21

404.1527(d)(2) were not facially complied with, the goal of providing a procedural safeguard of reasons was. The ALJ's failure to provide specific, "good reasons" for rejecting Dr. Mogilevski's opinion was a *de minimis* harmless error. No reversible error was committed here.

**B.    Substantial Evidence Supports the ALJ's Decision**

Plaintiff also brings a general objection that the ALJ's decision is not supported by substantial evidence. Though Plaintiff argues very little on this more general point, Defendant argues at length that the decision is supported by substantial evidence. It is therefore appropriate for the Court to address this matter as well. In sum, the Court again disagrees with Plaintiff, as the ALJ's decision is supported by substantial evidence.

It is the responsibility of the Commissioner of Social Security, acting through the ALJ, to determine whether a social security disability claimant qualifies as legally disabled, and is thus deserving of disability insurance benefits. *See* 20 C.F.R. § 404.1527(e)(1). To make this determination, the ALJ must perform a five-step analysis, as follows:

> First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (citing 20 C.F.R. §§ 404.1520, 404.920).

An impairment or combination of impairments is considered "severe" if it "significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  Moreover, "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience."  *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).  To determine if a claimant can perform his past relevant work or other work that exists in significant numbers in the national economy, the claimant's residual functional capacity must be ascertained.  Residual functional capacity is the most that a claimant can do in a work setting despite his impairments.  *See* 20 C.F.R. § 404.1545(a)(1).  Residual functional capacity must be assessed based on all the relevant evidence in the claimant's case record, and all medically determinable impairments must be considered, including those not considered "severe."  *Id.* (a)(1)-(2).  All of the ALJ's determinations in this five-step sequential analysis must be supported by substantial evidence to be upheld.

In the present case, the ALJ performed the five-step analysis and determined that Plaintiff suffers from the following severe impairments: mild to moderate obstructive sleep apnea symdrome; mild generalized osteoarthritis; fibromyalgia; cardiac disease with mild atypical angina; mild hearing loss; and obesity.  ALJ Opinion at 3-5.  However, the ALJ then found that none of these impairments were of "listing-level" severity, in that they did not meet or medically equal one of the listed impairments in the social security regulations.  *Id.* at 5-6.  Next, the ALJ determined that Plaintiff retains the residual functional capacity to perform light exertional work, subject to a variety of relatively minor restrictions, such as lifting and carrying twenty pounds occasionally and ten pounds frequently; standing, walking, and sitting six out of eight hours per workday; only doing occasional balancing, stooping, and kneeling and never crawling or

climbing; and avoiding extreme or excessive environmental hazards.  *Id.* at 6-9.  Based on this, the ALJ found that although Plaintiff could not perform his past relevant work, there was work available in significant numbers in the national economy that Plaintiff could perform, including bagger, factory assembler, and order caller.  *Id.* at 9-10.  As such, the ALJ concluded that Plaintiff was not disabled during the relevant time period of January 1, 2003 to December 31, 2004, and denied Plaintiff's application for disability insurance benefits.  *Id.* at 10-11.

These determinations are supported by substantial evidence.  Exercise testing at the Pattie A. Clay Hospital revealed that Plaintiff had normal sinus rhythm and sinus tachycardia.  Tr. at 127.  A May 1999 audiogram revealed that Plaintiff had only mild hearing loss.  Tr. at 148.  November 5, 2004 treatment notes from the Marcum and Wallace Memorial Hospital indicated that all Plaintiff's systems were negative and that all physical examinations were normal.  Tr. at 160-68.  2003 radiology reports were normal as well, with the only exception being an impression of spondylosis with only marginal spurring at L4-5 and L3-4.  Tr. at 295-304, 421.  2001 testing of Plaintiff was also normal, other than a GERD diagnosis.  Tr. at 424-27.  A December 30, 2004 echocardiogram found Plaintiff's left ventricle to be only mildly dilated with a normal ejection fracture greater than sixty percent, as well as only mild aortic sclerosis with mild mitral and tricuspid regurgitation.  Tr. at 249.  On this date, Plaintiff even told Dr. Cassidy that he had no prior history of cardiac disease, including rheumatic fever, heart murmurs, heart failure, or myocardial infarction.  Tr. at 246-47.  Dr. Cassidy also indicated that Plaintiff's panic attacks were controlled on Librium.  Tr. at 246.

Furthermore, Dr. Troutt noted that Plaintiff's pain is much more noticeable in the morning and improves as the day continues.  Tr. at 255.  Though Dr. Troutt speculated about

24

degenerative disc disease, he admitted that there were no abnormal findings here.  Tr. at 256.  Dr. Troutt noted that Plaintiff had a full range of motion in his back and his joints, despite his allegations of intense pain.  Tr. at 256.  Plaintiff had no spasms or trigger points, and straight leg tests were all negative.  Tr. at 256.  Plaintiff also admitted to Dr. Troutt at this time that he was not even taking his pain medications.  Tr. at 255.  Powell County Clinic notes from 2004 revealed generally normal results.  Tr. at 272-74.  These notes and additional x-rays in 2004 also revealed only mild degenerative disc disease, mild to moderate facet arthritis, and mild bilateral foraminal narrowing.  Tr. at 272-74, 330-32.  In addition, as the ALJ noted, Plaintiff is able to perform a variety of daily activities despite his allegations of intense pain, such as driving to town every day, visiting friends and family, mowing the lawn, shopping, and cooking.  ALJ Opinion at 8-9.  Plaintiff indicated that he was able to work part-time mowing lawns until September 2004, well into his period of supposed disability.  Id.  State agency assessments from Drs. Athy and Saranga, nonexamining sources, indicated that Plaintiff was not disabled during the relevant time period.[2]  Tr. at 306-20, 337-45.  Moreover, as discussed above, the ALJ properly found Plaintiff's allegations regarding the severity of his pain and other symptoms to be less than credible, due to the evidence already discussed and his perception of Plaintiff's appearance and actions during the administrative hearing.  ALJ Opinion at 8-9.  Where an ALJ's credibility determination has an appropriate basis in the objective record, as it does here for reasons explained earlier, it cannot be reevaluated by a reviewing court.  See Nelson, 195 Fed.

_____

[2]  Although these assessments were performed after the date last insured of December 31, 2004, it appears that Drs. Athy and Saranga both related their assessments back to the relevant disability period of January 1, 2003 to December 31, 2004.  See Tr. at 306 ("Assessment is from ____ to DLI 12/31/2004"); Tr. at 337 (noting that the RFC assessment is for "Date Last Insured: 12-31-2004").  These assessments are therefore relevant evidence despite originating after the date last insured.

Appx. at 468; *Garner*, 745 F.2d at 387.

It is clear to this Court that substantial evidence supports the ALJ's determination that Plaintiff was not disabled during the relevant time period of January 1, 2003 to December 31, 2004.  It bears repeating that substantial evidence is simply "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip*, 25 F.3d at 285-86. Therefore, if substantial evidence supports the ALJ's decision, the decision must be upheld by the Court, even if another outcome could reasonably have been reached from the record evidence.  *Jones*, 336 F.3d at 475.  Since the ALJ's non-disability decision applies the correct legal standards and is supported by substantial evidence, the Court will uphold it.  *See Warner*, 375 F.3d at 390.  No reversible error was committed here.

**WHEREFORE,** the Court being sufficiently advised, and for the reasons stated above:

(1)    Plaintiff's Motion for Summary Judgment is **DENIED**; and

(2)    Defendant's Motion for Summary Judgment is **GRANTED**.

Dated this 13th day of May, 2008.



**Signed By:**

**_Karen K. Caldwell_**

**United States District Judge**